# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

**United States of America,**

    **Plaintiff,**

**v.**　　　　　　　　　　　　　　　　　　　　　　　　**Case No. 13-20123-JWL**

**Willie Lee Pittman,**

    **Defendant.**

## MEMORANDUM & ORDER

Defendant Willie Lee Pittman was driving a vehicle on Interstate 35 in Olathe, Kansas when an officer with the Olathe Police Department initiated a traffic stop of the vehicle for following another vehicle too closely. After the officer discovered cocaine in the vehicle that Mr. Pittman was driving, Mr. Pittman was charged with conspiracy to possess with the intent to distribute and to distribute 500 grams or more of cocaine. Mr. Pittman has now filed a motion to suppress (doc. 14) in which he challenges both the initial stop and the scope and length of the subsequent detention as violating the Fourth Amendment. The court held an evidentiary hearing on the motion on January 29, 2014. At the hearing, the officer who initiated the stop testified and the video and audio recordings of the traffic stop were admitted into evidence and played for the court. After thoroughly considering the evidence presented at the hearing, including the court's own repeated review of the video and audio recordings, the court denies the motion.

**Facts**

On July 27, 2013 at approximately 6:53p.m., Officer Nicholas Stein was parked in the center median of Interstate 35 watching northbound traffic for the purpose of highway criminal interdiction. Officer Stein has been a police officer with the Olathe Police Department for approximately eight years and he presently works in the canine unit as an interdiction officer. Officer Stein has served as an interdiction officer for three or four years and he has received specialized training in that regard. Prior to serving as an interdiction officer, Officer Stein was a narcotics investigator for two years.

While Officer Stein was watching northbound traffic, he observed a Gold-colored Yukon SUV travel past his patrol car. Officer Stein noticed that the vehicle had Texas license plates which, through his training and experience, he recognized as a source state for illegal narcotics. Officer Stein put his patrol car into gear and moved into traffic on the Interstate. Shortly thereafter, Officer Stein activated the dash cam of his patrol car and monitored the Yukon, waiting for the driver of the Yukon to commit a traffic violation and enable Officer Stein to initiate a traffic stop. Officer Stein testified that he soon observed that the driver of the Yukon came "within less than one car length" of the vehicle traveling directly in front of the Yukon, a silver Cadillac. Officer Stein initiated a traffic stop based on a violation of a city ordinance that prohibits a driver from following another vehicle more closely than is reasonable and prudent under the circumstances.

Officer Stein exited his patrol car, turned on his audio recording device and then approached the Yukon vehicle from the passenger side to avoid standing too close to traffic on the Interstate. Officer Stein identified himself to the driver of the vehicle and, as it turned out, to the vehicle's sole passenger, a woman in the front seat. Officer Stein explained why he had

2

initiated the traffic stop and requested license and insurance information from the driver, Willie Lee Pittman. Officer Stein also asked Mr. Pittman whether he was the owner of the Yukon. Mr. Pittman replied that the car belonged to his girlfriend. When Officer Stein asked whether the woman in the passenger seat was Mr. Pittman's girlfriend, Mr. Pittman laughed and responded that she was not his girlfriend. While he was waiting for Mr. Pittman to obtain his license and current insurance information, Officer Stein observed an "overwhelming" odor of air freshener coming from the inside of the vehicle. He also noticed "at least three cell phones that were near the center console." Officer Stein testified that, in his training and experience as an interdiction officer, air freshener is routinely used to attempt to mask the odor of certain narcotics and the presence of multiple cell phones is another common indicator of drug trafficking.

At that point, Officer Stein asked Mr. Pittman to step outside the vehicle. Officer Stein testified that he made the request so that he could obtain additional information from Mr. Pittman concerning the citation and so that he could ask questions to Mr. Pittman outside the presence of the passenger in case Mr. Pittman and the passenger offered conflicting details about the nature of their relationship and their trip. Officer Stein then engaged Mr. Pittman in conversation near the front passenger door of Officer Stein's patrol car and he continued to gather information pertinent to issuing a citation. Officer Stein first asked Mr. Pittman whether he understood why Officer Stein had initiated the stop and if that made sense to him. Mr. Pittman replied "Yes, sir, it did make sense." Officer Stein then asked Mr. Pittman whether he felt like he "was maybe a little too close" to the Cadillac and Mr. Pittman can be heard on the audio recording replying "I do."

Looking at Mr. Pittman's driver's license, Officer Stein then asked Mr. Pittman about the location of his city of residence and Mr. Pittman indicated that it was "right next" to McAllen, Texas. Officer Stein next asked Mr. Pittman about his travel plans, and he indicated that he was going to visit his grandmother. When Officer Stein inquired about where Mr. Pittman's grandmother lived, he responded immediately with a full, exact address that, to Officer Stein, seemed rehearsed. Officer Stein then asked Mr. Pittman about the passenger in his car, and Officer Stein testified that he perceived a delay or hesitation before Mr. Pittman responded, "Samantha." Mr. Pittman told Officer Stein that he had known Samantha for two to three years. When Officer Stein then asked how long Mr. Pittman was planning to stay in town, Mr. Pittman replied that he had to go see his grandmother because his brother had injured his knee at work in an accident and then he needed to check on him so that they were going to spend a few days.

Officer Stein then left Mr. Pittman at the patrol car while he again approached the Yukon for the purpose of verifying that the VIN number of the vehicle matched the VIN number of the insurance card and for the additional purpose of communicating with the passenger in the vehicle. After checking the VIN number, Officer Stein asked Samantha to exit the vehicle and then inquired about her travel plans and her relationship with Mr. Pittman. Samantha told Officer Stein that they were traveling to Kansas City so that Mr. Pittman could visit his daughter and his grandmother and that she and Mr. Pittman had known each other for about two months. At that point, Officer Stein asked Samantha to step back toward his patrol car. By that time, other officers had arrived at the scene. Officer Stein then asked Mr. Pittman to sit in the back of another patrol car and explained that he was going to run his drug-detection dog around the Yukon to see whether the dog would alert to any odors. Following the dog's positive alert, Mr.

Pittman and Samantha were detained, the vehicle was searched and Officer Stein uncovered cocaine in the vehicle. From the time that Officer Stein approached the passenger window of the Yukon at the outset of the stop until the time when the dog alerted on the vehicle, approximately 17 minutes passed.

**Discussion**

The Fourth Amendment protects "persons, houses, papers, and effects [] against unreasonable searches and seizures." *United States v. Cash*, 733 F.3d 1264, 1273 (10th Cir. 2013) (quoting U.S. Const. amend. IV). A traffic stop is a "seizure" for purposes of the Fourth Amendment and such stops are analyzed under the principles developed for investigative detentions in *Terry v. Ohio*, 392 U.S. 1 (1968). *Id*. The evaluation of the reasonableness of a traffic stop is a two-part inquiry. *Id*. First, the court determines whether the officer's action was justified at its inception. *Id*. Second, the court determines whether the stop was reasonably related in scope to the circumstances which justified the interference in the first place. *Id*. Mr. Pittman, in his motion, challenges the legality of the initial stop and the duration of the stop.

*Initial Stop*

Under Tenth Circuit law, an initial traffic stop is valid under the Fourth Amendment if it is based on an observed traffic violation. *Id*. (citing *Swanson v. Town of Mountain View, Colorado*, 577 F.3d 1196, 1201 (10th Cir. 2009)). Officer Stein testified that he observed the Yukon come within less than one car length of the Cadillac immediately in front of it and that he

initiated the stop because Mr. Pittman was following the Cadillac too closely. The particular ordinance at issue reads as follows:

> The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway.

Olathe Municipal Code § 10.01.047(a). The sole inquiry, then, is whether Officer Stein had reasonable suspicion that Mr. Pittman violated this ordinance. *See United States v. Hunter*, 663 F.3d 1136, 1142 (10th Cir. 2011).

Reasonable suspicion requires that an officer provide "some minimal level of objective justification." *United States v. Vercher*, 358 F.3d 1257, 1261 (10th Cir. 2004) (citation omitted). An officer with reasonable suspicion need not "rule out the possibility of innocent conduct" as long as the totality of the circumstances suffices to form "a particularized and objective basis" for a traffic stop. *Id.* Moreover, reasonable suspicion may be supported by an "objectively reasonable" good faith belief even if premised on factual error. *Id.* (citation omitted). Finally, reasonable suspicion may rely on information less reliable than that required to show probable cause and it need not be correct. *Id.*

Mr. Pittman contends that the evidence does not support Officer Stein's testimony that the Yukon came within less than one car length of the Cadillac. According to Mr. Pittman, Officer Stein's perspective when he observed the alleged violation would simply not permit him to render anything more than a guess as to how closely the Yukon was following the Cadillac. Mr. Pittman urges that Officer Stein's patrol car was traveling in the lane to the immediate left of the Yukon and was several car lengths behind the Yukon at the time of the alleged violation. But as Mr. Pittman's counsel pointed out at the hearing, Officer Stein's precise perspective was

captured on the dash cam of the patrol car. The video tape clearly depicts the Yukon in the right lane, beginning perhaps 7 car lengths behind the Cadlillac and gradually gaining on the Cadillac until it comes within approximately one car length or less before decelerating and backing off the Cadillac. While Officer Stein's testimony and the video tape may not be sufficient to convict Mr. Pittman of a violation of the ordinance, it is certainly sufficient to provide a reasonable suspicion to effectuate a traffic stop. *United States v. Worthon*, 520 F.3d 1173, 1180 (10th Cir. 2008); *Vercher*, 358 F.3d at 1262 (officer's observations need only articulate a basis for a *suspicion* that a traffic violation might have been occurring).[1]

Mr. Pittman also argues that the stop was not supported by reasonable suspicion because there were no safety concerns implicated by Mr. Pittman's driving in that the road conditions were normal and the Yukon was traveling at or below the posted speed limit of 65 miles per hour. Mr. Pittman further suggests that the fairly congested nature of the traffic conditions at the time made it more difficult to keep a greater distance between the Yukon and the Cadillac. He points out that the Cadillac was clearly driving slower than the Yukon such that the Yukon somewhat unexpectedly came upon the Cadillac but decelerated quickly and then backed off, suggesting a reasonable and prudent response on the part of Mr. Pittman. Under the law as established in the Tenth Circuit, however, none of these arguments changes the court's analysis.

In *United States v. Vercher*, 358 F.3d 1257 (10th Cir. 2004), the Tenth Circuit applied a Kansas statute that mirrors the city ordinance relied upon by Officer Stein in stopping the

---

[1] Mr. Pittman did not testify at the hearing and, thus, did not dispute that the Yukon came within less than one car length of the Cadillac. Moreover, the court finds it significant that Mr. Pittman, on the audio recording, can be heard admitting to Officer Stein that he felt like he was following the Cadillac too closely. *See Worthon*, 520 F.3d at 1177, 1180 (reasonable suspicion existed for traffic stop in part because defendant admitted that he "thought he was too close.").

7

Yukon. The Circuit essentially held that a traffic stop based on following another vehicle too closely is reasonable when "[n]othing is advanced in the record that demonstrates that [the defendant] was prevented from applying his brakes to maintain a safe interval, or that he was in imminent danger of being rear-ended." *Worthon*, 520 F.3d at 1179 (quoting and summarizing *Vercher*). The Circuit further stated that an "officer's observation of the . . . dangerously close traveling distance provides sufficient objective justification to suspect that the distance between vehicles is not reasonable and prudent." *Vercher*, 358 F.3d at 1262. The video here depicts that there was no vehicle traveling closely behind the Yukon such that Mr. Pittman may have felt in danger of being rear-ended if he applied his brakes or otherwise decelerated. The video also depicts that there was ample opportunity for Mr. Pittman to slow down to maintain a safe distance but he declined to do so until he was within less than one car length of the Cadillac. *See id.* (traffic stop for following too closely was reasonable where driver did not slow down to maintain safe distance and instead maintained a half-second difference in an attempt to pass the vehicle). In such circumstances, the court must conclude that Officer Stein had reasonable suspicion to stop Mr. Pittman for following too closely in violation of the ordinance. *See United States v. Martin*, 2004 WL 2011456, at *4 (D. Kan. Aug. 19, 2004) (despite fact that driver only violated two-second following rule after coming upon a slower moving tractor trailer in a congested stretch of the Interstate and she signaled to change lanes immediately after coming behind the trailer, and that weather conditions were ideal and driver was not speeding, court concluded that officer had reasonable suspicion to stop plaintiff for following vehicle too closely).

Accordingly, Officer Stein's clear and credible testimony concerning his observation of the Yukon coming within less than one car length of the Cadillac, together with the court's independent review of the video recording, provides the minimal level of objective justification required for reasonable suspicion that Mr. Pittman was driving the Yukon in violation of the city ordinance.

*Scope and Length of Detention*

Having concluded that Officer Stein's initial stop of the Yukon was legitimate, the court now considers whether the subsequent detention of Mr. Pittman was reasonable. Mr. Pittman contends that beyond the two-minute mark of the stop, when Officer Stein had obtained Mr. Pittman's driver's license and insurance information, there was no further investigative purpose to be served and that Officer Stein should have done nothing more than issue a citation. The court concludes, in all respects, that Officer Stein's subsequent actions were appropriate in purpose and in scope.

It is well-established that an officer conducting a routine traffic stop is entitled to ask a driver about his travel plans and ownership of the vehicle and, in addition, may ask questions regardless of the content of those questions so long as the officer is still engaged in the citation process and the questioning does not extend the time the driver would otherwise be detained. *United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1258-59 (10th Cir. 2006). Applying this law, although Officer Stein's questioning of Mr. Pittman was not limited to travel plans and ownership of the vehicle, the questions—regardless of the topic—do not appear to have appreciably lengthened Mr. Pittman's detention and the questions occurred while Officer Stein

9

was performing tasks related to the citation process. Under these circumstances, the Fourth Amendment requires no justification. *Id.* at 1259. Even if Officer Stein arguably could have performed his tasks faster had he not been asking interdiction questions, the total time involved in the detention is not beyond the time reasonably required to complete those tasks. *See id.* (total detention of 10 minutes not unreasonable and officer lawfully questioned driver for the duration of that stop while he performed tasks related to issuance of warning ticket and verifying license). The court, then, finds the questioning of Mr. Pittman (and, thus, the detention) lawful.

Mr. Pittman, however, suggested at the evidentiary hearing that Officer Stein artificially extended the citation process beyond the time that was reasonably required to complete that process for the purpose of asking interdiction questions. Even if that were true, the court nonetheless would find the detention lawful. Within minutes of the stop, Officer Stein had sufficient facts to justify continuing the detention of Mr. Pittman regardless of the citation process. Officer Stein learned almost immediately that Mr. Pittman did not own the Yukon and that the owner was not in the vehicle. *See United States v. Vasquez*, 555 F.3d 923, 929 (10th Cir. 2009) (reasonable suspicion created when neither of the vehicle's occupants was the registered owner of the vehicle). He noted an "overwhelming" odor of air freshener coming from the vehicle and the presence of three cell phones near the center console. *See United States v. Bradford*, 423 F.3d 1149 (10th Cir. 2005) (presence of cell phone, standing alone, might be innocuous, but can contribute substantially to reasonable suspicion in context of other facts); *United States v. Sanchez-Valderuten*, 11 F.3d 985 (10th Cir. 1993) (officer had reasonable suspicion to detain motorist based on the masking smell of air freshener in vehicle).

During that continued detention, Officer Stein obtained more facts that further supported the continued detention. Officer Stein obtained conflicting information from Mr. Pittman about his travel plans—first that he was going to visit his grandmother (at an address that appeared rehearsed to Officer Stein and to the court upon hearing the audio recording) and then that he was checking on the well-being of his brother. When Officer Stein questioned Samantha, he obtained more conflicting information—that they were traveling to Kansas City to visit Mr. Pittman's daughter and that she and Mr. Pittman had known each other for two months (in stark contrast to the period of two to three years offered by Mr. Pittman in response to the same question).

The facts that evolved during the course of the stop, then, gave rise to reasonable suspicion that Mr. Pittman was involved in illegal activity regardless of whether Officer Stein should reasonably have completed the citation process earlier in the stop. In such circumstances, the Tenth Circuit has routinely upheld detentions that stretch well beyond the time required to run a license check and write a citation. *See Cash*, 733 F.3d at 1275 (detention of roughly 18 minutes not unreasonable where defendant was visibly nervous, gave inconsistent statements and officer observed device on passenger seat used to cheat drug tests); *United States v. Kitchell*, 653 F.3d 1206, 1218–21 (10th Cir. 2011) (21 minutes and 45 seconds not unreasonable where inconsistent travel plans, nervousness, and use of a rental car gave rise to reasonable suspicion of criminal activity); *United States v. Villa–Chaparro*, 115 F.3d 797, 802–03 (10th Cir. 1997) (38 minutes to await arrival of canine unit not unreasonable where defendant failed to pull over promptly or provide proof that he could lawfully operate the vehicle, and the officer observed soap crystals—a common masking agent—on the floorboard); *United States v.*

11

*Cervine*, 347 F.3d 865, 872–73 (10th Cir. 2003) (50 minutes*); see also United States v. Sharpe*, 470 U.S. 675, 685 (1985) ("[O]ur cases impose no rigid time limitation on *Terry* stops."). The 17-minute detention that occurred in this case is well within the range of detentions upheld by the Circuit.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Mr. Pittman's motion to suppress (doc. 14) is denied.

**IT IS SO ORDERED.**

Dated this 31st day of January, 2014, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge